Roberts, J.
—The special exceptions of defendants in the nature of a plea of privilege, being matter alone pleadable in abatement, and being filed after a general demurrer and general denial, was properly overruled by the court. They were not filed in “the due order of pleading.” (O. & W. Dig., Art. 426.) The fact that the matter embraced in the special exceptions was shown in the petition, so that “the truth of the plea appeared of record,” would dispense with its being pleaded formally under oath, and with the necessity of adducing other proof in support of it; nevertheless, it was a dilatory plea, (however it might be presented,) which must precede a general demurrer and general denial. (Paschal’s Dig., Arts. 1 to 4.)
Whatever form it may assume in its presentation, it is a plea of privilege, in abatement of the suit, claimed under the statute, which prescribes that “no person, who is an inhabitant of the State, shall be sued out of the county *78 where he has his domicile, except,” &c. (0. & W. Dig., 401.)
The court was also correct in overruling the exception of plaintiff to the special plea of the defendants, in the nature of a plea of non est factum, and in refusing to exclude the evidence of defendants in support of it. For in this case the general denial would have accomplished the same object. The contract purported to have been executed, not by defendants, in their own names, signed by themselves, or for them by Saunders, but by Saunders himself; he assuming therein to act as “ agent of the "Western Stage Company,” and simply subscribing his own name thereto, “R. M. Saunders.” The defendants’ names do not appear in any part of the instrument. Therefore, to make this contract binding on these defendlnts, as their contract, it was incumbent upon Compton to allege, and, under the issue formed by a general denial, to prove, that the persons constituting the Western Stage Company were these defendants; and, further, that they had authorized Saunders to make such a contract, or that they had conferred upon him powers sufficiently enlarged to include the authority to make this instrument for them. There may be other reasons why the court was correct; this will suffice.
The next point arises upon the bill of exceptions of the plaintiff. That relates to the ruling of the court, in the admission of the evidence adduced by defendants to prove that the plaintiff had failed to perform his part of the contract, by which the defendants were released from continuing the connection and co-operation stipulated in the agreement, and from paying to the plaintiff the amounts upon passengers on their stage-line therein agreed upon.
The solution of the question here presented must depend upon the proper, construction to be given to the contract sued on.
It appears, that, previous to this agreement, the defendants were the contractors and owners of a line of stages *79 from Waco to Austin, and the plaintiff of one from Waco to Dallas, being of about equal length; that plaintiff was running not only his own line, hut also continued his line of stages along the defendants’ line, from Waco to Austin, so as to run in opposition to defendants; and that, on account of the advantage of its connection, throughout the whole route from Austin to Dallas, the plaintiff’s opposition stages between Austin and Waco got more passengers than the regular line of defendants.
Under these circumstances, it was agreed, that plaintiff should stop running his opposition line from Waco to Austin; that each party should run his own line; and that the two lines should run in connection with each other; and that, in the division of the passengers’ fare over the lines, the plaintiff should receive an advantage over the defendants, in proportion of $10 to $6.
This contract was intended to continue in operation until July, 1858. It was complied with, on the part of defendants, fully, from its date to the 17th of March, 1856; after which they continued to run their own line separately, and refused to pay plaintiff, any of the proceeds thereof during the balance of the time.
The defendants sought to justify their refusal to pay further on said contract, by alleging and proving, not that plaintiff did not run. his line from Waco to Dallas at all, hut that he ran it so irregularly, and with such inadequate means of transportation, arising from insufficient vehicles, horses, and drivers, that the line, as a whole, running in connection, was greatly injured by the failure of plaintiff to accommodate and facilitate the travel on the route in a manner reasonably appropriate, and defendants sustained loss thereby. The evidence objected to was appropriate to prove these things during the years 1855-’56-’57.
How, if the plaintiff was bound by the contract, not only to run his line, hut also to run it in such a way as to accommodate and facilitate the travel of passengers, who might *80 wish to pass along both lines, in a manner reasonably appropriate, then this evidence of the condition, and management of plaintiff’s line, both abstractly and in comparison with that of defendants’ line, during the whole time the contract was intended to continue in force, was admissible.
The terms of the contract on this subject are, that “they will run in connection their respective routes between Austin and Waco and between Waco and Dallas.”
As to passengers, the effect of the contract was to make the whole distance between Austin and Dallas one line. They might pay their passage-money at one end of it through to the other; so of any part of the line. It was, therefore, necessarily contemplated in the contract, and, as the very essence thereof, that each party should not only run his part of the line, but also run it in such a way as to reasonably accommodate the passengers throughout the whole connected line, at whatever end or part of each line they might start.” This was evidently the construction placed upon the contract by the court below in the charge to the jury, to which no exceptions were made by either party.
Withdrawing the opposition line of plaintiff was not all the consideration moving from plaintiff to defendants under this contract. The running his part of the line in such way as that the travel on the whole line might be reasonably accommodated and facilitated, and travel thereon thereby encouraged and attracted, was also a consideration of the contract; and, when that failed, the defendants were absolved from continuing the- connection under the contract. It certainly could not prejudice the rights of the plaintiff to prove such failure after the 17th of March, 1856, as well as before that time. For, during whatever time such failure existed before the time for the expiration of the contract, the plaintiff had no right to complain of their non-performance.
This is one of that species of contracts that usually *81 makes a winning bargain as between the parties, but a lost prize before the jury, unless very strictly performed by the complaining party, who has the advantage in it.
It, therefore, imposes on the court trying the cause the duty of great caution, to have the legal rights of the complaining party strictly awarded to him, in the admission of the evidence, and in the charge given to the jury.
We think this duty was fully performed by the court below in the trial of this cause.
Judgment affirmed.